IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENIS MURRAY,                                        Case No. 1:15-cv-02120-MA

                                  Plaintiff,         OPINION AND ORDER

            v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                        Defendant.

TIM WILBORN
P.O. Box 370578
Las Vegas, NV 89137

        Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

SARAH ELIZABETH MOUM
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

        Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Denis Murray seeks judicial review of the final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, I reverse the Commissioner's decision and remand for an immediate award of benefits.

## FACTUAL AND PROCEDURAL BACKGROUND

This case has a lengthy procedural background. On September 15, 2006, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning January 1, 2006, due to arthritis, diffuse idiopathic skeletal hyperostosis ("DISH"), high blood pressure, high cholesterol, chronic kidney stones, thyroid condition, acid reflux, sleep apnea, anxiety and depression. Tr. 106. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). An ALJ held a hearing on April 29, 2009, and issued an unfavorable decision on May 20, 2009. The Appeals Council denied Plaintiff's request for review. On June 28, 2011, the United States District Court for the District of Oregon granted a stipulated order reversing and remanding the ALJ's decision. On November 16, 2011, the Appeals Council remanded the case to an ALJ for a hearing.

On September 19, 2012, a second hearing before an ALJ was conducted, and on February 4, 2013, the ALJ issued a second unfavorable decision. On January 28, 2014, the Appeals Council granted Plaintiff's request for review and remanded the case for further proceedings.

On August 19, 2014, the ALJ conducted a third hearing, at which Plaintiff appeared with his attorney and testified. Vocational expert Steven R. Cardinal also appeared and testified. On

2 - OPINION AND ORDER

December 8, 2014, the ALJ issued a third unfavorable decision.  On September 18, 2015, the Appeals Council denied Plaintiff's request for review.  Thus, the ALJ's December 8, 2014 decision is the Commissioner's final decision for purposes of this court's review.

Born in 1950, Plaintiff was 56 years old on his alleged onset of disability and 64 years old on the date of the ALJ's 2014 decision. Plaintiff has completed four or more years of college. Plaintiff has past relevant work as a city planning director, a job he performed on  a part-time basis for 13 years working approximately 24 hours per week.  Plaintiff alleges he retired from his city planning director position on December 31, 2005 due to pain from his impairments.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ found that Plaintiff meets insured status requirements for a DIB application through December 31, 2010. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (claimant seeking Title II benefits must establish disability prior to the date last insured).  Plaintiff's alleged onset of disability is January 1, 2006.  Therefore, Plaintiff must establish that between January 1, 2006 and December 31, 2010, he was unable to work due to any medically determinable physical or mental impairment, or combination of impairments, that has lasted or can be expected to last for a continuous period of

3 - OPINION AND ORDER

12 months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. Transcript Social Security Administrative Proceeding ("Tr.") at 513, 515, ECF No. 7.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity from January 1, 2006 through his date last insured, December 31, 2010. At step two, the ALJ found that Plaintiff has the following severe impairments through his date last insured: degenerative disc disease with a history of laminectomy, DISH with radiculopathy, cervical degenerative disc disease and osteoarthritis. At step three, the ALJ found that Plaintiff's impairments or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed that through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work but with the following limitations:

> he is limited to occasional climbing of ramps and stairs. He cannot climb ladders, ropes, and scaffolds. [Plaintiff] is further limited to frequent balancing, but only occasional stooping, kneeling, crouching and crawling. He is also limited to no exposure to hazards, such as unprotected heights.

Tr. at 519.

At step four, the ALJ found that Plaintiff is able to perform his past relevant work as a city planning director. Accordingly, the ALJ concluded that Plaintiff has not been under a disability under the Social Security Act from January 1, 2006 through December 31, 2010.

## ISSUES ON REVIEW

On appeal to this court, Plaintiff contends the following errors were committed: (1) the ALJ improperly found his mental impairments nonsevere at step two; (2) the ALJ improperly evaluated his testimony; (3) the ALJ improperly evaluated the opinions of his treating physicians Rudy Greene, M.D., Richard Morris, M.D., and Jill Hersch, Ph.D.; examining physician Thomas Brent Shields,

4 - OPINION AND ORDER

Ph.D.; and other source Susan DeMarinis, D.C.; (4) the ALJ improperly evaluated the lay testimony of his wife Ellen Murray, and friend Michael Meiring; and (5) the ALJ improperly concluded he can perform his past relevant work at step four.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Where "the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

////

////

5 - OPINION AND ORDER

## DISCUSSION

### I.    The ALJ Did Not Err Step Two

At step two, a claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). *See also Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(a), (b).

In the decision, the ALJ found Plaintiff's mental impairments do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, and therefore are nonsevere. Tr. 518.   However, as noted above, the ALJ found Plaintiff has numerous other impairments that are severe at step two.  Plaintiff argues that the ALJ erred in determining his mental limitations are nonsevere.   I disagree.

Here, the ALJ resolved step two in Plaintiff's favor, finding other severe impairments and continuing with the sequential evaluation.  Therefore, even assuming *arguendo* the ALJ erred at step two, the error is harmless. *Burch v. Barnhart,* 400 F.3d 676, 682 (9th Cir. 2005); *see also Gray v. Comm'r of Soc. Sec. Admin.*, 365 Fed. App'x 60, 61 (9th Cir. 2010) (rejecting argument that the ALJ erred at step two by determining certain impairments were nonsevere, because any alleged error was harmless since "the ALJ concluded that [claimant's] other medical problems were severe impairments"); *Mondragon v. Astrue*, 364 Fed. App'x 346, 348 (9th Cir. 2010) ("Any alleged error at step two was harmless because step two was decided in [claimant]'s favor with regard to other

ailments."). To the extent that Plaintiff alleges the ALJ erred in evaluating the medical evidence of

his mental impairments when considering his RFC, I addresses those arguments below. In short,

even if the ALJ erred in failing to identify depression and anxiety as severe, the error is harmless.

## II.    The ALJ Failed to Provide Clear and Convincing Reasons for Discounting Plaintiff's Credibility

### A.    Standards

To determine whether a claimant's testimony regarding subjective pain or symptoms is

credible, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529. The first stage is a

threshold test in which the claimant must produce objective medical evidence of an underlying

impairment that could reasonably be expected to produce the symptoms alleged. *Molina,* 674 F.3d

at 1112; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the

credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and

convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms.

*Garrison,* 759 F.3d at 1014-15; *Carmickle, v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166

(9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to

conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763

F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when

making such credibility determinations include the objective medical evidence, the claimant's

treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or

adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at

1163; *Tommasetti*, 533 F.3d at 1039.

At the April 29, 2009 hearing, Plaintiff testified that he retired from his position with the City of Phoenix in January 2006 due to health reasons. Plaintiff testified that he worked part-time and believed he could no longer perform the job. Tr. 618. Plaintiff testified that on a typical day, he would work from eight o'clock to noon, then come home and lie down for an hour or two to relieve pain in his back. Tr. 619. Plaintiff testified that he likes to attend car shows and that he uses a mobility scooter to get around when attending shows. Tr. 624. Plaintiff described that he has degenerative disc disease affecting his lower back, DISH disease affecting his upper back, and arthritis affecting his neck. Tr. 626. Plaintiff described that he belongs to a gym for people over 50 years old and performs exercises and stretching daily. Tr. 628. Plaintiff testified that his hobby is working on antique cars and that how long he can work on a car depends on the day. Tr. 631. Plaintiff testified that he lays on a creeper and that it takes him a while to get onto the creeper, or he works from a small stool at a workbench. Tr. 631-32. Plaintiff stated that he does not lift more than 20 pounds, and asks friends for assistance. Tr. 632. Plaintiff testified that when he is in pain, he tends to withdraw and has difficulty socializing. Tr. 633-34. Plaintiff testified that he lies down for an hour every day – even on a good day – and that on a bad day, he will spend a good portion of time lying down. Tr. 635.

At the 2014 hearing, Plaintiff testified that he worked for the City of Phoenix for eleven years part-time as a planner. Tr. 554. Plaintiff described that at times, he would have to go home to lie down and take pain medication. Tr. 555. Plaintiff described that his hobby is to rebuild old cars. Tr. 555. Plaintiff indicated that he has rebuilt a carburetor and repairs broken parts. Tr. 556. Plaintiff noted that he lives with his wife on three quarters of an acre of property, and that he uses a riding mower to mow the lawn. Tr. 557. Plaintiff stated that he occasionally barbeques when the

weather is nice. Tr. 558. Plaintiff testified that he takes care of his two small dogs, takes them for short walks. Plaintiff testified that he will sit at the computer and check emails, and will typically lie down during the day to stretch and rest his back. Tr. 559. Plaintiff testified that if he does the grocery shopping, he will do so for 20 to 30 minutes. Tr. 560. Plaintiff testified that his legs will occasionally go numb, and that he will have to rest for a few minutes until the episode passes. Tr. 561. Plaintiff stated that his radiculopathy in his legs and pain in his back has stayed the same since his date of onset. Tr. 562.

Plaintiff testified that he decided to leave his city planning job because his symptoms collectively got to the point where he was having difficulty completing his projects on time and was having difficulty attending evening hearings, a requirement of his job. Tr. 563. Plaintiff testified that the evening hearings were the most difficult for him because that is when his pain is the worst, and when he has the most difficulty concentrating. Tr. 564. Plaintiff testified that he was having difficulty answering questions at public hearings. Tr. 574. Plaintiff stated that the staff reports he was required to prepare were taking two to three times longer to complete because he was having a difficult time concentrating due to his pain. Tr. 563. Plaintiff testified that he cannot stand or walk two hours in an eight hour day. Tr. 567-68. Plaintiff testified that he can sit for an hour, but has difficulty rising from sitting. Tr. 568. Plaintiff stated that he can lift ten pounds. Tr. 568-69.

In an October 24, 2006 Function Report-Adult, Plaintiff described that in a typical day, he wakes with a stiff back and neck, and takes a hot shower. Tr. 119. After breakfast, Plaintiff stated he goes to the gym to perform stretching exercises. If his pain level is high, he will go home and lie down or sit in a chair. If his pain level is moderate, he will work around the house, such as mow the lawn, do the laundry or work in the garage on his antique cars. Plaintiff described that if his back

begins to spasm, he must stop all activity and lie down. Plaintiff stated that his back and neck pain increases throughout the day. Tr. 126. Plaintiff indicated that in the evening, he prepares dinner for thirty minutes, then sits in a lounge chair until he goes to bed between nine and ten o'clock. Tr. 121, 126. Plaintiff indicated that if his pain is intense, his wife will cook. Plaintiff indicated that he takes care of his dogs, with help from his wife. Plaintiff noted that he does not need any help with personal care, except if his back is in severe spasms.

Plaintiff stated he is able to drive and ride in a car, unless his pain is too great. Tr. 122. Plaintiff indicated that he enjoys watching television, RV-ing, wine tasting, and working on antique cars and that he is only able to perform these tasks when his back pain permits. Tr. 123. Plaintiff described that he is able to go to dinner, play cards and board games, and go on wine tours, attend car shows, swap meets, and church. Plaintiff also indicated that if a lot of walking is involved, he will use a mobility scooter. Tr. 123. Plaintiff indicated that he does not handle stress very well, and that it causes his back muscles to tighten. Tr. 125. Plaintiff noted that he has had panic attacks prior to traveling. Tr. 125.

In an October 24, 2006 Pain Questionnaire, Plaintiff stated that he gets an intense pain in his lower and middle back, with chronic pain from the tightness of his muscles in his back and neck. Plaintiff stated that he will get a sharp pain in his back sporadically lasting a few seconds, but his chronic pain can last all day. Tr. 127. Plaintiff noted that stress, standing or sitting for more than one hour, and riding in the car makes the pain worse and that lying down makes the pain better. Tr. 127. Plaintiff indicated that he takes celebrex, lexapro and tramadol for pain. Tr. 128. Plaintiff noted he can be up and active for two hours before needing to rest on some days, other days he can be active for four to six hours. Tr. 128.

In the 2014 decision, the ALJ found that Plaintiff's allegations and testimony concerning his subjective limitations were not entirely credible. The ALJ listed several reasons for discounting Plaintiff's testimony: (1) his active lifestyle is inconsistent with his alleged limitations; (2) he failed to comply with treatment; (3) he inconsistently reported improvement.

>    a.    *Plaintiff's active lifestyle*

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti,* 533 F.3d at 1039. However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant's daily activities may undermine his allegations if the claimant spends a substantial part of his day engaged in activities that are transferrable to a work setting, or if the activities contradict his testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ discounted Plaintiff's credibility because he engages in an active lifestyle inconsistent with the level of impairment he alleges. For example, the ALJ indicated that Plaintiff mows the lawn with a riding lawnmower, walks the family dogs, runs errands, checks his emails on the computer, shops, and occasionally barbeques meals. The ALJ noted that Plaintiff flew to Las Vegas, Nevada in 2006 without difficulty, traveled to Portland for a car show, reported that he had multiple trips planned, and restores antique cars. The ALJ indicated that Plaintiff exercises four times a week, performs home exercises, as receives chiropractic treatments regularly. The ALJ

found that these activities demonstrate that Plaintiff has the physical ability to function, and the mental ability to socially interact, concentrate, attend, and persist, contrary to his allegations of impairment. Tr. 522.

Admittedly this case is a difficult one – as demonstrated by the multiple appeals and nearly ten years of medical records. Yet, when viewing the record as a whole, I conclude the ALJ's rationale is not supported by substantial evidence and thus fails to provide a clear and convincing basis for discounting Plaintiff's testimony. The activities described by the ALJ are not inconsistent with Plaintiff's allegations. The record contains evidence that Plaintiff no longer travels by plane, and when traveling by car, he stretches every hour to relieve pain and numbness. Tr. 42, 624-25. Also, consistent with Plaintiff's reports to his various treatment providers, each time he has traveled lengthy distances, there is an exacerbation of his low back pain, neck pain, and numbness. Tr. 264, 413-14, 448-49, 975-76, 1148. And, consistent with Plaintiff's testimony that he has difficulty walking distances longer than one block, Plaintiff reports he brings along a mobility scooter to assist him in getting around car shows. Tr. 41, 264, 624. Plaintiff testified that the dogs are small, and do not require extensive walking. Tr. 559. Plaintiff also testified that his wife prepares the foods for barbequing, and that he simply grills the items. Tr. 558. The camping described by Plaintiff is done in an RV – he is not backpacking and pitching a tent. Tr. 123, 415. The exercises Plaintiff performs at the gym are stretching exercises and pedaling on a stationary bicycle – he is not lifting weights or attending cross fit classes. Tr. 46, 264.

With respect to working on cars, Plaintiff testified that he does what he can, takes breaks when needed, and that he has great difficulty getting underneath the cars. Tr. 49-50. The ALJ

discounted Plaintiff testimony because he admitted to rebuilding a carbuerator, but there is nothing in record indicating that working on the carbuerator exceeds Plaintiff's lifting restrictions.

Accordingly, I conclude that the ALJ's finding is not supported by substantial evidence in the record as a whole, and therefore erred in discounting Plaintiff's testimony based on his active lifestyle. *Vertigan*, 260 F.3d at 1050 (holding that grocery shopping, driving a car, walking for an hour, getting together with her friends, playing cards, swimming and reading did not undermine claimant's allegations of disabling back pain). Plaintiff's ability to perform some activities at his own pace with frequent opportunities to rest does not establish that he has the ability to work full-time on a consistent basis.

>    b.    *failure to comply with treatment*

The ALJ discredited Plaintiff for failing to attend physical therapy, noting he was discharged after failing to attend therapy for one month in November 2007. Tr 381. The ALJ noted that Plaintiff began physical therapy again in 2009, but again missed appointments despite admitting that his back and neck pain were improved. However, the record does not fully support the ALJ's conclusion. Substantial evidence supports the ALJ's conclusion that Plaintiff was discharged from physical therapy in November 2007. Yet contrary to the ALJ's finding, Plaintiff stopped physical therapy in 2009 due to the clinic closing, requiring Plaintiff to travel to Central Point to continue care. Tr. 997, 1146-47. Furthermore, subsequent to 2007, Plaintiff consistently attended physical therapy, including at least 58 sessions from 2011 to 2014, missing appointments only when he was out of town or was switching insurance companies. Tr. 952, 1146-48. Thus, I conclude the ALJ's finding is not supported by substantial evidence in the record as a whole. Accordingly, this rationale is neither a clear nor convincing reason for discounting Plaintiff's testimony.

13 - OPINION AND ORDER

     *c.*    *medical improvement and inconsistent statements*

In the decision, the ALJ noted that the objective medical record showed improvement and stability, contrary to Plaintiff's allegations of disability. An ALJ may consider prior inconsistent statements concerning symptoms and "other testimony by [plaintiff] that appears less than candid in weighing plaintiff's credibility." *Tommasetti*, 533 F.3d at 1039. As the ALJ accurately reported, Plaintiff has reported he was doing "okay," was feeling better, and was maintaining despite doing some physically challenging work at home. Tr. 377, 962, 963. Plaintiff did report to his physical therapist in September 2011 that he worked on a heavy home improvement project, and was building a deck. Tr. 963, 964. Plaintiff's ability to perform a heavy home improvement project is inconsistent with his allegation that he cannot lift more than 25 pounds. Thus, the ALJ's finding in this regard is supported by substantial evidence and the ALJ could discount Plaintiff's testimony on this basis.

However, numerous other reports by Plaintiff relied upon by the ALJ are not clearly or specifically supported by substantial evidence. For example, the ALJ relied on various reports by Plaintiff to Dr. Greene in 2006 that Plaintiff's lumbar spondylosis was improved, and his DISH stable. Tr. 521. The ALJ fails to note, however, that in August 2005, Dr. Greene opined that Plaintiff had "severe bilateral foraminal narrowing impinging on the right S1 nerve" and that Plaintiff may be disabled due to his lumbar disk disease. Tr. 244-45. Additionally, Dr. Greene's 2006 treatment notes consistently reflect a decreased range of motion in the neck and low back, and that in August 2006, he recommended bed rest for an acute exacerbation of his lumbar spondylosis. Tr. 229-37. In November 2006, Plaintiff reported to Dr. Greene he had increased pain and achiness,

with numbness in his hands. Tr. 316-18.  Thus, contrary to the ALJ's finding, Dr. Greene's records

reflect a mixed picture, at best.

The ALJ discredited Plaintiff because he reported to Dr. Hersch in December 2007 that he

was "feeling better," and reported to a physical therapist in December 2011 and February 2012 that

he was "doing okay," and had increased back pain after driving "a lot." Tr. 521.  The ALJ found that

Plaintiff was doing well, except when he over-exerted himself, and that Plaintiff could perform the

right job with the right restrictions.  Tr. 521.

Contrary to the ALJ's finding, Plaintiff's reports to Dr. Hersch and his physical therapists

also are consistent with Plaitniff's testimony concerning his limitations.  Indeed, the ALJ did not

discuss that in October 2007, Plaintiff reported to Dr. Hersch that he was feeling increased

depression due to increased back pain, and the unpredictability of his physical abilities.  Tr. 379.

Moreover, although Plaintiff reports to his physical therapists instances of improved mobility and

decreased pain, there frequently are times when Plaintiff has increased pain and soreness.  Tr. 945-

978.

Having carefully reviewed Plaintiff's various reports of improvement cited by the ALJ, I

conclude that they are not supported by substantial evidence when the record is viewed as a whole.

While there are instances where Plaintiff has reported feeling better and has increased abilities,

similarly there are instances of exacerbation, increased pain, and reduced abilities.  Plaintiff's reports

are consistent with his allegations of waxing and waning symptoms with ongoing back pain.

In summary, although the record supports one of the reasons the ALJ provided to discount Plaintiff's testimony,[1] on the record before me, I conclude that the ALJ's remaining reasons, when taken together, do not amount to clear, convincing and specific support for the ALJ's adverse credibility determination. The ALJ has erred.

## III.    The ALJ Erred in Evaluating the Medical Evidence

### A.    Standards

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle,* 533 F.3d at 1164. To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Garrison,* 759 F.3d at 1012; *Ghanim,* 763 F.3d at 1161. When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). In addition, a doctor's work restrictions based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than fully credible. *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson,* 359 F.3d at 1195.

////

////

---

[1] Although substantial evidence supports the ALJ's decision to discredit claimant based on his inconsistency in building a deck, this is one instance in the 1,365-page record spanning nearly ten years. By and large, Plaintiff's alleged limitations are consistent with his allegations of increased pain and decreased range of motion.

### B.    *The ALJ Erred in Evaluating the Opinions of Dr. Greene*

Dr. Greene is Plaintiff's treating rheumatologist.  Although Dr. Greene did not provide a separate medical source statement, Dr. Greene treated Plaintiff as early as 2004 and his treatment notes contain three opinions reflecting Plaintiff's inability to work full-time.  In August 2005, Dr. Greene opined that Plaintiff's may be disabled due to his severe lumbar degenerative disk disease. Tr. 244.    In June 2009, Dr. Greene opined that Plaintiff cannot work full-time due to his intermittent disability. Tr. 900.  In April 2011, Dr. Greene opined that Plaintiff's depression was amplifying his pain.  Tr. 886.

In the decision, the ALJ gave Dr. Greene's June 2009 and April 2011 opinions "little weight" because they are not supported by the objective medical record, are inconsistent with Plaintiff's active lifestyle, and because Plaintiff's mental impairments cause only mild limitations.  Plaintiff complains that the ALJ failed to provide adequate reasons,[2] backed by substantial evidence, for discounting Dr. Greene's opinions.  Plaintiff is correct.

### 1.    *consistent with medical evidence.*

A medical opinion's inconsistency with the objective medical record may constitute an adequate reason to discredit that opinion. *Tommasetti*, 533 F.3d at 1041. In the decision, the ALJ reasoned that Dr. Greene's "[c]hart notations emphasize improvement, rather than disability." Tr. 521.  Contrary to the ALJ's finding, the overall record is consistent with Dr. Greene's opinions.

First, Dr. Greene's opinions of severe lumbar spondylosis and degenerative disk disease are

---

[2] Contrary to Plaintiff's suggestion, Dr. Greene's opinions were contradicted by those of nonexamining physicians Richard Alley, M.D., and Martin Kehrli, M.D.  Therefore, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence to discount Dr. Greene's opinion.

wholly supported by objective medical evidence. To be sure, a July 2005 lumbar MRI ordered by Dr. Greene shows widespread degenerative changes, with "[m]oderately severe multilevel degenerative disk disease and facet arthrosis elsewhere in the lumbar spine . . . resulting in multilevel foraminal narrowing and central canal stenosis at the L2-3, L3-4, and L4-5 levels." Tr. 200-01. Additionally, at L5-S1, the MRI shows right paracentral disk protrusion/extrusion combined with facet arthrosis, resulting in severe bilateral neural foraminal narrowing, with the disk protrusion "just abut the budding right S1 nerve root." Tr. 200-01. Dr. Greene's August 2005 treatment notes indicate that the results of the July 2005 MRI showed "multilevel severe degenerative disk disease, L5-S1 right paracentral disk protrusion causing severe bilateral neural foraminal narrowing impinging on the right S1 nerve. Cervical MRI showing spondylosis at multiple levels." Tr. 244. Dr. Greene indicated that Plaintiff's lumbar spondylosis is "quite severe" and that this condition could be exacerbated by stress, prolonged sitting or any movement. Tr. 244. Additionally, Dr. Greene opined that Plaintiff "may indeed be disabled secondary to such severe lumbar disk disease," and that Plaintiff's cervical spondylosis was "severe enough neck disease as well to warrant disability although he possibly could work part time." Tr. 244-45. Remarkably, the ALJ failed to discuss the significant objective findings of the July 2005 lumbar spine MRI, and failed to discuss Dr. Greene's August 2005 treatment notes. Clearly, Dr. Greene's 2005 opinion is supported by objective evidence.

Although Dr. Greene's August treatment note and opinion and the July 2005 MRI are just prior to Plaintiff's alleged onset date, they provide significant background information for Dr. Greene's remaining treatment notes and opinions. Thus, I conclude the ALJ erred in omitting any discussion of Dr. Greene's 2005 opinion. *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395

18 - OPINION AND ORDER

(9th Cir. 1984) (noting ALJ need not discuss all medical evidence presented, but must explain why significant, probative evidence has been rejected).

Second, the 2005 MRI findings are largely supported by a 2008 CT scan of the lumbar spine, which showed at L5-S1 "marked narrowing of the disc space" and a "dorsal retrolisthesis of L5 on S1" and "narrowing of both neural foramina due to the disc space narrowing and adjacent facet anthropathy." Tr. 424.

Third, Dr. Greene's opinion was supported by Zakir Ali, M.D.   Plaintiff was seen by Dr. Ali in January 2009, for EMG nerve conduction studies to rule out any significant neuorgenic damage. As the ALJ accurately reported, Plaintiff's symptoms reflected intermittent radicular compression, without any evidence of significant radicular nerve damage. Tr. 476. Dr. Ali noted that Plaintiff's symptoms are "very suggestive of compression of the lumbosacral nerve roots in his back." Tr. 475. Dr. Ali opined that the EMG or nerve conduction tests "cannot determine compression of the nerve root from foraminal stenosis . . . In his particular condition the pain, numbness and intermittent weakness may be from compression or irritation of a right sided lumbosacral nerve root, most likely the right S1 or L5." Tr. 477, 475-76.   Dr. Ali noted that a weight-bearing MRI would be most diagnostic. Tr. 476. In the decision, the ALJ focused on the lack of nerve damage when discounting Plaintiff's testimony, and overlooked that Dr. Ali's opinion substantiated Dr. Greene's 2005 opinion and the corresponding 2005 lumbar MRI results. Thus, the ALJ's finding that Dr. Greene's opinions are not supported by the objective medical record is not supported by substantial evidence.

And finally, the ALJ discounted Dr. Greene's 2009 opinion that Plaintiff suffers from intermittent disability because Dr. Greene's treatment notes show improvement and stability.   As discussed above, the ALJ erred in discounting Plaintiff's credibility on this basis. Dr. Greene's notes

19 - OPINION AND ORDER

show periods of improvement, as well as periods of increased pain and decreased abilities. Therefore, I conclude the ALJ erred in discounting Dr. Greene's opinion on this basis. *See Hase v. Colvin*, 6:15-cv-01214-BR, \_\_\_\_ F.Supp.3d \_\_\_, 2016 WL 5107032, \*7 (D. Or. Sept. 19, 2016) (holding ALJ erred in discounting physician's opinion on same basis as discrediting claimant); *see also Garrison*, 759 F.3d at 1017 (noting ALJ may not discount physician's opinion simply because there are "[c]ycles of improvement and debilitating symptoms" over the course of months or years).

### 2.    *Plaintiff's active lifestyle*

The ALJ discounted Dr. Greene's opinion because it is inconsistent with Plaintiff's active lifestyle. As discussed above with respect to Plaintiff's credibility, the ALJ erred in discrediting Plaintiff on this basis. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir.1999) ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted") (internal quotations and citations omitted). As discussed above with respect to Plaintiff's credibility, Dr. Greene's treatment notes from 2006 though 2011 report instances where Plaintiff's DISH and depression are stable, or improved. However, Dr. Greene's treatment notes also reflect numerous instances where Plaintiff's pain is increased, and his condition worsened. Therefore, this rationale is not supported by substantial evidence and does not provide a specific and legitimate basis for discounting Dr. Greene's opinions. The ALJ has erred.

### 3.    *depression exacerbated his pain*

In the decision, the ALJ rejected Dr. Greene's 2011 opinion that Plaintiff's lumbar pain was exacerbated by depression. The ALJ concluded that Plaintiff's mental impairments cause only mild limitations, and therefore, discounted Dr. Greene's conclusion that Plaintiff's depression worsened

his lumbar pain.  I conclude this is not a specific or legitimate basis to disregard Dr. Greene's opinions.  Dr. Greene's treatment notes reflect that Plaintiff's depression waxes and wanes with his pain from his low back, and that Plaintiff's depression is significantly improved on medication.  Tr. 314.  However, none of Dr. Greene's opinions provide that Plaintiff is disabled by his mental impairments.  Rather, Dr. Green's assorted opinions in 2005, 2009 and 2011 identify Plaintiff's cervical and lumbar spondylosis as the source of his disability.  Accordingly, the ALJ's rationale is not supported by substantial evidence in the record as a whole.

### C.    The ALJ Erred in Evaluating Dr. Morris's Opinion

Dr. Morris is Plaintiff's treating primary care physician.  Dr. Morris opined in March 2005 that his low back and neck pain are increasing and that exploring disability is reasonable.  Tr. 345-48.  In a March 2008 treatment note, Dr. Morris advised Plaintiff to avoid prolonged activities, and overhead work.  Tr. 429.   In a January 2012 treatment note, Plaintiff reported to Dr. Morris that he was experiencing increased numbness in his back and legs, and is only able to walk one block without pain.  Tr. 927.  In that note, Dr. Morris indicated that Plaintiff complains of parethesias in both lower extremities, not classic for spinal stenosis or claudication, and that x-rays and revealed only degenerative changes.   Dr. Morris stated that he did not know the source of Plaintiff's symptoms, and requested a neurological consultation.   Tr. 927-929.   Dr. Morris provided a November 2012 medical source statement containing a similar opinion.  Tr. 1322.   In the decision, the ALJ rejected Dr. Morris's 2012 opinion because he was unable to determine the source of Plaintiff's medical problem.   Tr. 526.

The Commissioner concedes that the ALJ did not provide a specific or legitimate reason for discounting Dr. Morris's 2012 opinion. The Commissioner insists that the error is harmless because

Dr. Morris's treatment notes and 2005 and 2008 opinions do not express any limitations that exceed the capabilities of Plaintiff's past relevant work as a city planning director. According to the Commissioner, Plaintiff's work as a city planning director does not involve vigorous exercise or overhead work, and therefore, even if Dr. Morris's opinions are credited, the limitations described do not prevent Plaintiff from performing his past relevant work. I disagree.

In January 2012, Dr. Morris opined that Plaintiff needed to avoid prolonged activities due to exacerbation of pain and numbness. Plaintiff's past relevant work ("PRW") as a city planner was described as highly skilled sedentary work. Tr. 527. Sedentary work is defined as a job that involves sitting most of the time, with walking and standing occasionally required. 20 C.F.R. § 404.1567(a). Plaintiff testified that he cannot sit for more than one hour. Although Plaintiff's PRW as a city planner does not involve overhead work, it would require prolonged sitting. Crediting Dr. Morris's opinion, it is not possible for Plaintiff to perform the full-range of sedentary work without increasing his pain and numbness. *See Desrosiers v. Sec. Health Human Servs.*, 846 F.2d 573, 580 (9th Cir. 1988) (finding plaintiff could not perform light work due to pain from prolonged activity). Therefore, contrary to the Commissioner's contention, the error in evaluating Dr. Morris's opinion is not harmless. *See Triechler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (holding an error is harmless only if it is inconsequential to the nondisability determination).

> D.   *The ALJ Did Not Err in Evaluating the Opinion of Jill Hersch, Ph.D.*

Dr. Hersch is Plaintiff's treating psychologist and provided counseling to Plaintiff intermittently from 2006 through 2014. Dr. Hersch opined in a letter dated September 10, 2014 that Plaintiff does not have the ability to "perform skilled or semi-skilled work on a day to day basis in a regular work setting" and that additional physical constraints caused by the workplace would

exacerbate Plaintiff's pain. Tr. 1363-64. Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for discounting her 2014 opinion. I disagree.

In the decision, the ALJ provided numerous reasons for discounting Dr. Hersch's opinion. First, the ALJ discounted her opinion because it is outside the area of her expertise. Here, the ALJ described that Dr. Hersch's opinion focused on Plaintiff's physical pain, which is outside the scope of Dr. Hersch's area of expertise. Tr. 525. *See* 20 C.F.R. § 404.1527(d)(5) (generally more weight is given to the opinion of a specialist about issue related to his or her specialty). The ALJ's findings in this regard are backed by substantial evidence.

Second, the ALJ discounted Dr. Hersch's opinion because it is inconsistent with her treatment notes. For example, the ALJ detailed that in 2006, Plaintiff sought counseling from Dr. Hersch for anxiety, including Plaintiff's difficulty flying, concerns about retiring, and some depression that occurred when a relative died. Tr. 525. The ALJ noted that the bulk of Dr. Hersch's notes from 2004 to 2007 related to mild mental symptoms and relate to Plaintiff's pain complaints. As the ALJ correctly indicated, Dr. Hersch's notes refer to mild anxiety and depression, and that Dr. Hersch has not diagnosed a pain disorder. Indeed, Dr. Hersch's notes are consistent with those of Drs. Greene and Morris indicating that Plaintiff's depression increases with exacerbation of his back pain and that his mental impairments are situational and well-controlled with medication. The ALJ's findings are backed by substantial evidence, and the ALJ reasonably could find that Dr. Hersch was treating Plaintiff for anxiety unrelated to his allegations of disability.

Finally, the ALJ discounted Dr. Hersch's opinion because it was provided some seven years after her last treatment notations. This is a specific and legitimate reason to discount a physician's opinion. *See Orn*, 495 F.3d at 631 (noting ALJ may consider the length and frequency of

examination when weighing opinions). Because the ALJ's reasoning concerning Dr. Hersch is supported by substantial evidence, and is a reasonable interpretation of the record, it will not be disturbed.

      *E.*     *The ALJ Erred in Discounting the Opinion of Other Source Susan Demarinis, D.C.*

Dr. DeMarinis has been Plaintiff's chiropractor for over 10 years. In an October 2006 physical capacities summary, Dr. DeMarinis noted that Plaintiff's DISH disease is progressive and that he additionally is limited by degenerative disc disease. Dr. DeMarinis opined that Plaintiff has a very limited ability to sit or stand for more than 30 minutes, extremely limited ability to walk any distance, and moderately limited in his ability to lift more than 25 pounds, particularly overhead. Dr. DeMarinis indicated that if Plaintiff performs activity overextending his limited capacity creates further limitation in his spinal ranges of motion. Tr. 186. Dr. DeMarinis opined that if Plaintiff continued to work at desk and computer station, the effects would be "particularly detrimental." Tr. 186.

In the decision, the ALJ gave limited weight to Dr. DeMarinis's conclusions. The ALJ discounted Dr. DeMarinis's opinion offering two primary reasons: (1) it was motivated by secondary gain; (2) the limitations expressed in DeMarinis's opinion are inconsistent with the activities performed by Plaintiff described in her treatment notes; and (3) the medical evidence shows improvement and stabilization.

The Commissioner concedes that the ALJ improperly relied on secondary gain as a rationale. However, the Commissioner argues that the inconsistency between the activities described in Dr. DeMarinis's treatment notes and her opinions is a germane reason for discounting them.

24 - OPINION AND ORDER

As discussed above, I have determined that the ALJ erred in discounting Plaintiff's credibility based on his active lifestyle and lack of objective medical evidence. Consistent with DeMarinis's opinion, each time Plaintiff participates in activities that exceed his described limitations, he exacerbates his back and/or neck resulting in increased pain. Additionally, Plaintiff has periods of improvement, as well as periods of exacerbation. Therefore, I conclude that the ALJ has not provided germane reasons that are backed by substantial evidence for discounting DeMarinis's opinion. *See Hase*, 2016 WL 5107032 at *7 (where ALJ errs in discounting claimant's credibility, ALJ errs in discounting physician's opinion premised on same reasons). The ALJ has erred.

F.      *The ALJ Erred in Discounting the Opinion of Thomas Brent Sheilds, Ph.D.*

Dr. Sheilds performed a psychodiagnostic evaluation in December 2006. In that evaluation, Dr. Shields observed that Plaintiff walked slowly and stiffly, displayed pain behavior when transitioning from sitting to standing, and shifted his weight during the interview. Tr. 272. Dr. Sheilds noted that Plaintiff's mood was depressed and appeared mildly distracted. Dr. Shields found that Plaintiff could spell "world" forward and backwards without complication, and made one error on the serial sevens task, indicating mild problems with concentration. Tr. 272. Dr. Shields found that Plaintiff exhibited moderate depression and anxiety, and noted that Plaintiff's self-reported symptoms appeared consistent with other records Dr. Shields reviewed. Tr. 274. Dr. Shields noted that Plaintiff's primary complaint is physical pain, not his mental impairments. Dr. Shields opined that Plaintiff's psychological factors are not a "significant role in exacerbating his physical problems and/or perception of pain. Hence, a diagnosis of pain disorder appears unlikely." Tr. 274. Dr. Shields opined that Plaintiff has mild impairment in attention and concentration, and is capable of

understanding, remembering, and carrying out simple to moderately difficult instructions. Tr. 274. Dr. Shields further opined that Plaintiff:

> seems likely to exhibit moderate impairment in his ability to sustain concentration, persistence and pace for 8 hours a day, 5 days per week. Based on Dr. Susan DeMarinis' statements (10/26/06), this man is likely to have significant physical limitations to working in even a skilled labor context. Of course, whether or not he can persist physically should be determined through medical evaluation.

Tr. 275. Dr. Shield diagnosed an anxiety disorder, NOS (depression and anxiety) and assigned a GAF of 55.

In the decision, the ALJ gave Dr. Shields opinion little weight because it was based on Dr. DeMarinis's opinion. As discussed above, the ALJ erred in discounting Dr. DeMarinis's opinion, and therefore this is not a specific and legitimate basis to discount Dr. Shields's opinion. The Commissioner also contends that the ALJ cited to inconsistencies between Dr. Shields findings on the mental status examination indicating Plaintiff's mild limitation in concentration and his opinion that Plaintiff would have moderate impairment in sustaining concentration, persistence and pace. The Commissioner's second rationale stretches what can reasonably be inferred from the ALJ's decision. *See Connett v. Barnhart*, 340 F3d 871, 874 (9th Cir. 2003) (holding the court is constrained "to review the reasons the ALJ asserts").

Even if the ALJ did cite this inconsistency as a basis for discounting Dr. Shields' opinion, I find no discrepancy in Dr. Shields' findings. Plaintiff's ability to sustain concentration, persistence and pace for a full day is a different measurement of his abilities than his orientation, attention and concentration in performing the serial sevens task and spelling "world." *Compare* Tr. 272 *with* 274-75. Accordingly, this rationale is not supported by substantial evidence and fails to provide a specific and legitimate basis for discounting Dr. Shields' opinion.

26 - OPINION AND ORDER

In summary, I conclude that the ALJ has erred in evaluating the medical evidence. To be sure, the ALJ discounted every treating or examining provider to care for Plaintiff in favor of the nonexamining agency physicians. On the record before me, I conclude the ALJ has committed harmful error. The ALJ's errors in evaluating Plaintiff's testimony and the medical evidence are outcome determinative, and therefore, I decline to address Plaintiff's remaining arguments.

## IV.    Remand

The Ninth Circuit provides that an award of benefits is appropriate where three prerequisites are met: (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has not provided legally sufficient reasons for rejecting the evidence; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison,* 759 F.3d at 1020; *Triechler,* 775 F.3d at 1101. The decision to remand for an award of benefits is always discretionary, and the court may decline to do so if there is "serious doubt" the claimant is disabled. *Garrison*, 759 F.3d at 1021. Here, Plaintiff satisfies all three conditions of the credit-as-true standard.

First, there are no outstanding issues that need to be resolved, and no additional proceedings are necessary. The record contains nearly ten years of medical records, with numerous evaluations of Plaintiff's physical and mental capacities. There is also sufficient vocational testimony in the record from which to assess whether someone with Plaintiff's limitations can sustain work on a full-time basis. Additional evidence would not be beneficial or enlightening. Remanding this case would serve no useful purpose. *Garrison*, 759 F.3d at 1022.

Second, as discussed above, the ALJ failed to provide legally sufficient reasons to support the adverse credibility determination and evaluation of the medical evidence from treating physicians

27 - OPINION AND ORDER

Drs. Greene and Morris, examining psychologist Dr. Shields, and Plaintiff's chiropractor Dr. DeMarinis concerning Plaintiff's pain and its impact on his abilities.

Third, if the improperly credited evidence were credited as true, it is clear the ALJ would be required to find Plaintiff disabled. To be sure, Plaintiff testified that he lays down for at least an hour each day to relieve pain and discomfort in his back. Tr. 555, 599, 639. The VE testified at the 2014 hearing that if an individual was off task for ten percent of each day, the person is not competitively employable. Tr. 579. Similarly, if Drs. Greene and Shields' opinions are credited as true, the vocational testimony establishes that Plaintiff is disabled. Tr. 577.

Finally, an exercise of my discretion to award benefits in this case appropriate. I have carefully examined the medical evidence in this lengthy transcript and have no serious doubt as to the limitations expressed by Plaintiff and numerous treating and examining providers who have attested to those same limitations.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to Plaintiff is REVERSED and this proceeding is REMANDED for an immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this _4_ day of JANUARY, 2017.


Malcolm F. Marsh
United States District Judge